UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIA FAGAN,

    Plaintiff,   Case No. 15-cv-10211
                                          Hon. Matthew F. Leitman

v.

SPEEDWAY, LLC,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #16)

During a visit to a retail establishment owned and operated by Defendant Speedway, LLC ("Speedway"), Plaintiff Marcia Fagan ("Fagan") fell and sustained injuries to her foot. She claims that a defective condition in Speedway's parking lot – a large crack in the pavement (the "Crack") – caused her injury. In this action, she asserts premises liability and nuisance claims against Speedway. Speedway has now moved for summary judgment (the "Motion"). (*See* ECF #16) For the reasons explained below, the Court **GRANTS** the Motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Speedway operates gas stations and convenience stores in Michigan and elsewhere. The Speedway location at issue in this case is located at 14 Mile and Haggerty Road in Oakland County, Michigan. (*See* Compl. at ¶ 4, ECF #1 at 2,

1

Pg. ID 2.) At this particular Speedway location, there is a small parking area adjacent to the convenience store with three or four marked parking spots. (*See* Fagan Dep. at 19, ECF #16-3 at 7, Pg. ID 141.)

In the parking spot nearest the sidewalk ("Spot #1"), there is a crack in the asphalt that runs parallel to the curb. (*See* ECF #16-5 at 7, Pg. ID 160.) The crack is approximately a quarter of an inch deep and runs approximately the full length of the curb. (*See id.* at 5, Pg. ID 158; *see also* Linda Grammer Dep. at 21, ECF #16-7 at 8, Pg. ID 175.) Spot #1 and the Crack appear in the photographs below:

 

(ECF #16-5 at 7, Pg. ID 160)        (ECF #16-5 at 12, Pg. ID 165)



(ECF #16-5 at 6, Pg. ID 159.)

Linda Grammer ("Grammer"), a district manager at Speedway, has acknowledged that the Crack in Spot #1's asphalt is "large." (*See* Grammer Dep. at 32, ECF #16-7 at 10, Pg. ID 177.) But she insists that the Crack poses no danger. (*See id.* at 22, ECF #16-7 at 8, Pg. ID 175.) She testified that approximately 500 people walk through Speedway's parking lot every day without incident and that no customer has ever complained about falling or tripping on the Crack. (*See id.* at 15-16, 30, ECF #16-7 at 6, 10, Pg. ID 173, 177).

On September 3, 2014, Fagan arrived at Speedway at approximately 2:00 or 3:00 p.m. (*See* Fagan Dep. at 16, ECF #16-3 at 6, Pg. ID 140.) She parked her car in Spot #1. (*See id.* at 19, ECF #16-3 at 7, Pg. ID 141.) When Fagan stepped out

of her car, she stepped directly onto the sidewalk/curb and made her way into the convenience store to purchase cigarettes. (*See id.* at 18, ECF #16-3 at 7, Pg. ID 141.) Fagan did not notice (or step on) the Crack at that time. (*See id.* at 20, ECF #16-3 at 7, Pg. ID 141.)

After Fagan made her purchase, she returned to her car. While she was opening her car door, her right foot slid off the sidewalk/curb, went down into the Crack, and "rolled."[1] (*Id.* at 23, ECF #16-3 at 8, Pg. ID 142.) An x-ray later revealed that Fagan had fractured her foot in two places. (*See id.* at 29, ECF #16-3 at 10, Pg. ID 144.)

Fagan testified that she did not see the Crack before her fall because her car was parked directly on top of the Crack such that the Crack was "covered by [her] car." (*Id.* at 23-24, ECF #16-3 at 8, Pg. ID 142.) Stated another way, Fagan said that her car "was concealing" the Crack. (*Id.* at 33, ECF #16-3 at 11, Pg. ID 145.)

Fagan does not know how or why her foot slipped off the sidewalk/curb and into the Crack. (*See id.* at 22-24, ECF #16-3 at 8, Pg. ID 142.) She knows of no defects or unsafe conditions on the sidewalk/curb, itself, that could have caused her foot to slip off. (*See id.*) Indeed, she testified that she is "not claiming that the curb was defective." (*See id.* at 24, ECF #16-3 at 8, Pg. ID 142.)

---

[1] Fagan referred to the Crack as a "hole" in her deposition and her filings in this case.

Fagan filed her Complaint in this action on January 20, 2015.  (*See* ECF #1.) The Complaint does not contain separately number counts, but it appears to assert three claims: premises liability, nuisance, and negligent hiring/supervision of subcontractors.  The central allegation in the Complaint is that the Crack constituted a defective condition on Speedway's premises that posed an unreasonable risk of harm and caused her injuries. (*See* Compl. at ¶¶ 23-39, ECF #1 at 7-13, Pg. ID 7-13.)

On January 13, 2016, Speedway filed the Motion and moved for summary judgment. (*See* ECF #16.)  The Court held on hearing on the Motion on May 11, 2016.

## **GOVERNING LEGAL STANDARD**

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Id.*   "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252.  Summary judgment is not appropriate

when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

## ANALYSIS

**A.  Michigan Law Governs Fagan's Claims**

The Court has subject matter jurisdiction over this action based upon the diversity of the parties' citizenship and the amount in controversy. *See* 28 U.S.C. § 1332(a)(1). In a diversity action, the Court applies the substantive law of the forum state – in this case, Michigan. *See Jandro v. Ohio Edison Co.,* 167 F.3d 309, 313 (6th Cir. 1999).

**B.  Speedway Is Entitled to Summary Judgment on Fagan's Premises Liability Claim**

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Buhalis v. Trinity Continuing Care Servs.*, 822 N.W.2d 254, 258 (Mich. Ct. App. 2012) (quoting *Benton v. Dart Props. Inc.*, 715 N.W.2d 335 (Mich. Ct. App. 2006)). Speedway is entitled to summary judgment on Fagan's premises liability claim because Fagan cannot satisfy the first element of that claim – that Speedway owed her a duty to protect her from the Crack.

6

In *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012), the Michigan Supreme Court reviewed "the rules governing . . . what duty a premises possessor owes to those who come onto his land." The court explained that "[w]ith regard to invitees [like Fagan here], a landowner owes a duty to use reasonable care to protect invitees from *unreasonable* risks of harm posed by *dangerous* conditions on the owner's land." *Id.* (emphasis added). But a landowner "'owes no duty to protect or warn' of dangers that are open and obvious . . . ." *Id.* (quoting *Riddle v. McLouth Steel*, 485 N.W.2d 676 (Mich. 1992)). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id.* (citation omitted).

Here, as Fagan's counsel candidly and properly conceded during the hearing before the Court, the Crack is plainly "open and obvious" when Spot #1 is unoccupied. Indeed, the photographs of Spot #1 reveal that the Crack is easily visible upon casual inspection when there is no car covering it. (*See* ECF #16-5 at 6-7, 12, Pg. ID 159-60, 165.) And the Michigan Supreme Court has made clear that unobstructed common potholes are ordinarily "open and obvious" hazards that landowners have no duty to protect against. *See Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384, 388 (Mich. 2001) ("Using a common pothole as an example, the condition is open and obvious and, thus, cannot form the basis of liability against a

7

premises possessor."). Speedway insists that because the Crack was visible, it was akin to a "common pothole" and was an open and obvious hazard from which Speedway had no duty to protect Fagan.

Fagan counters that Spot #1 was occupied (by her car) at the time of her accident, and she insists that the Crack was not visible under these circumstances. The evidence, when viewed in Fagan's favor, supports this argument. Speedway's own employees acknowledged that the Crack may not be visible when a vehicle parks very close to the curb in Spot #1. (*See* Grammer Dep. at 25, ECF #16-7 at 9, Pg. ID 176; Joan Hassberger Dep. at 24-25, ECF #16-8 at 9, Pg. ID 190.) And Fagan testified that when she parked in Spot #1, her car "covered" the Crack. (*See* Fagan Dep. at 33-34, ECF #16-3 at 11, Pg. ID 145). Thus, there is evidence to support Fagan's argument that at the moment she fell, the Crack was located directly "under her car" and was thus not visible upon casual inspection. (*See* Fagan's Resp. Br. at 5, ECF #18 at 12, Pg. ID 326.) In light of this evidence, the Court cannot conclude as a matter of law that the Crack was open and obvious under the circumstances that exist here. Thus, Speedway is not entitled to summary judgment on its open and obvious defense.[2]

---

[2] Speedway argues that under Michigan law, a hazard may be open and obvious even when it is covered. In support of that argument, Speedway cites decisions in which the Michigan Court of Appeals held that holes covered by leaves were open and obvious and that black ice covered by snow was open and obvious. (*See* Speedway Rep. Br. at 3, ECF #22 at 3, Pg. ID 420.) But those cases are

But the very evidence that Fagan cites to defeat Speedway's open and obvious defense – i.e., the location of the Crack "under her car" at the time of her accident – is ultimately fatal to her premises liability claim. As noted above, landowners have a duty only to protect against "*unreasonable* risks of harm," *Hoffner*, 821 N.W.2d at 94 (emphasis added), and when the Crack was entirely covered by Fagan's car, it did not pose an unreasonable risk of harm to her (or to any other person). Simply put, there is no reason to believe that a pothole or crack in pavement that is completely covered by a vehicle poses an unreasonable threat to passersby. Indeed, under ordinary circumstances, a pothole or crack that is entirely covered by a parked car poses *no* risk to persons walking nearby because it is extremely unlikely that such persons would end up under the car and in contact

---

distinguishable. In each of those cases, the courts stressed that the *material covering the hazard* – i.e., the leaves covering the hole and the snow covering the ice – *was, itself, dangerous*, and that the presence of that material should have alerted the plaintiffs that they were approaching a hazardous area. *See, e.g.*, *Williams v. Holiday Ventures Apartments., Inc.*, 2011 WL 711443, at *1 (Mich. Ct. App. Mar. 1, 2011) ("[E]ncountering a leaf covered walkway in the autumn in Michigan is not an unusual or unexpected circumstance or condition. Such a situation would alert the average individual to the potential danger for either a slippery condition due to the presence of the leaves or the possibility of the existence of a hidden condition underneath the leaves."); *Ververis v. Hartfield Lanes*, 718 N.W.2d 382, 386 (Mich. Ct. App. 2006) ("[W]e hold as a matter of law that, by its very nature, a snow-covered surface presents an open and obvious danger because of the high probability that it may be slippery."). Here, in contrast, the item covering the Crack – Fagan's car – did not, itself, create, any danger, and nothing about her vehicle should have put Fagan on notice of potential danger.

with the pothole or crack.³ Because the Crack did not pose an unreasonable risk of harm to Fagan at the moment her foot slipped into it, Speedway had no duty to protect Fagan from the Crack, and her premises liability claim based upon the Crack fails as a matter of law.⁴

The fact that Fagan did ultimately come into contact with the Crack does not tend to prove in any way that the Crack posed an unreasonable risk of harm at the time of her accident. Fagan's foot made contact with the Crack through an unusual and unexpected series of events. For some unknown and unexplained reason, her foot slipped off of a sidewalk/curb that was *properly* maintained and *not* defective in any way (*see* Fagan Dep. at 20, 24, ECF #16-3 at 7, 8, Pg. ID 141, 142), and her foot ended up beneath her car in the Crack. This unique sequence of events says nothing about whether the Crack posed any general risk to persons walking by.

---

³ Pretend for a moment that a witness was standing behind Fagan's vehicle immediately before her accident and that the witness saw the Crack located (in Fagan's words) "under her car." (Pl.'s Resp. Br. at 5, ECF # 18 at 12, Pg. ID 326.) If, at that moment, someone asked the witness whether the Crack posed an unreasonable risk of harm to Fagan (or anyone else), the witness (and a hypothetical reasonable person) would most surely say "no" because the witness would recognize that the odds of Fagan (or anyone else) ending up under the vehicle and in contact with the Crack were remote.

⁴ Unfortunately for Fagan, this is a case of "heads Speedway wins, tails Fagan loses." If the Crack was not entirely covered by her vehicle, then it would have been discoverable upon casual observation and, therefore, open and obvious. If the Crack was entirely covered by her vehicle, then the Crack did not pose an unreasonable risk of harm. In both circumstances, Speedway owed no duty to protect Fagan against the Crack.

Finally, the primary cases cited by Fagan do not save her premises liability claim. In *MacAskill v. Kroger Co.*, 2015 WL 966245 (Mich. Ct. App. 2015) and *Pippin v. Atallah*, 626 N.W.2d 911 (Mich. Ct. App. 2001), the Michigan Court of Appeals held that two property features were not open and obvious. But those decisions do not help Fagan because (for the reasons explained immediately above) her claim fails even if the Crack was not open and obvious.

Accordingly, the Court will grant summary judgment in favor of Speedway on Fagan's premises liability claim.

## C. Speedway is Entitled to Summary Judgment on Fagan's Nuisance Claim

"Historically, Michigan has recognized two distinct versions of nuisance, public nuisance and private nuisance." *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 719 (Mich. 1992). Fagan cannot establish either "version" here.

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Id*. Fagan does not allege that Speedway interfered with the use and enjoyment of her land, and thus she may not maintain a claim for a private nuisance. *See Marble v. Dobson*, 1998 WL 1989918, at *1 n.1 (Mich. Ct. App. 1998) (explaining that a plaintiff who suffered an injury after falling into a pothole "clearly" had "no cause of action for a private nuisance" because "no land owned by plaintiff [was] involved" in his claim).

"A public nuisance involves the *unreasonable* interference with a *right common to all members of the general public*." *Sholberg v. Truman*, 852 N.W.2d 89, 92 (Mich. 2014) (emphasis added). Thus, to be a public nuisance, an activity or condition "must be harmful to the public health; or create an interference in the use of a way of travel; or affect public morals; or prevent the public from the peaceful use of their land and the public streets." *Garfield Tp. v. Young*, 82 N.W.2d 876, 879 (Mich. 1957) (citations omitted). And the interference with these public rights must be "significant" for a condition to rise to the level of a public nuisance. *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 540 N.W.2d 297, 300 (Mich. Ct. App. 1995).

The existence of the Crack on Speedway's property does not fit within any of the categories of "public nuisance" recognized by the Michigan Supreme Court. Indeed, the only category that even arguably applies is "harm to the public health," but the undisputed evidence conclusively establishes that the Crack did not significantly threaten the greater *public* health. As described above, Grammer testified that approximately 500 people walk through the Speedway parking lot each and every day, and nobody other than Fagan has ever reported being injured by, nor even complained about, the Crack. And the Crack stands in sharp contrast to the conditions and/or activities that have been deemed sufficiently threatening to the public health to constitute a public nuisance. *See, e.g.*, *Organic Chemical Site*

12

*PRP Grp. v. Total Petroleum, Inc.*, 58 F. Supp. 2d 755, 765 (W.D. Mich. 1999) (release of hazardous chemicals could pose sufficient threat to public health to constitute public nuisance); *Norton Shores v. Carr*, 265 N.W.2d 802, 806 (Mich. Ct. App. 1978) (business operation that caused black dirt dust to blow off of property constituted public nuisance). Under these circumstances, the Crack does not amount to a public nuisance.

Notably, Fagan has not cited a single decision in which any Michigan court has held that a pothole or pavement crack on private property amounts to a public nuisance. And courts in other states have flatly rejected the notion that a pothole in the parking lot of a retail establishment may amount to a public nuisance.[5] Fagan's claim that the Crack constituted a public nuisance therefore fails as a matter of law.[6]

---

[5] *See, e.g.*, *Ricchiuiti v. The Home Depot, Inc.*, 412 F. Supp. 2d 456, 460 (E.D. Pa. 2005) (rejecting public nuisance claim based on pothole in parking lot because "[a] pothole in a parking lot affects [only] a very small segment of the community, namely the users of the lot"; also noting that "research has not uncovered any precedent where a pothole in parking lot used by the public has been deemed a 'public nuisance.'"); *Burns v. Simon Property Grp., L.L.P.*, 996 N.E.2d 1208, 1213 (Ill. App. Ct. 2013) (rejecting public nuisance claim because "[t]he deterioration of the Macy's parking lot did not affect the 'community at large' and instead affected a defined segment of the community, namely, those using the Macy's parking lot . . . ."); *Wrighten v. Rapid Car Wash*, 2007 WL 4171626, at *4-5 (Conn. Super. Ct. 2007) (same).

[6] Fagan purports to assert claims for "negligent nuisance," "nuisance in fact," and "nuisance per se." But these are subcategories of public and private nuisances. *See Johnson v. Tilton*, 2002 WL 31310160, at *3-4 (Mich. Ct. App. Oct. 15, 2002)

13

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Speedway's Motion for Summary Judgment (ECF #16) is **GRANTED** in its entirety.[7]

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: May 23, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 23, 2016, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

---

("Public nuisance can be further broken down into two distinct categories: nuisance per se . . . and nuisance in fact."). Since Fagan cannot establish either a public or private nuisance, she cannot prevail under any of these theories.

[7] Fagan did not respond to Speedway's arguments attacking her claim that Speedway breached a duty "to contact and hire competent subcontractors and general contractors . . . to plan, construct and/or maintain the parking lot." (*See* the Motion at 19-24, ECF #16 at 33-38, Pg. ID 110-15.) Accordingly, this claim is deemed abandoned. *See Bauer v. County of Saginaw*, 111 F. Supp. 3d 767, 783 (E.D. Mich. 2015) ("Generally, a party may abandon claims by failing to address or support them in a response to a motion for summary judgment.").